And the next case on the calendar is Gray v. Weselmann. Good morning, Your Honor. May it please the Court, my name is Glenn Formica. I represent the appellant, Wayne Gray, in this matter. This is an unfortunate situation where Mr. Gray was arrested, charged, and sentenced or imprisoned for about 744 days under the misapprehension of facts by the government that he was an alien or a foreign-born person and not a United States citizen. Misapprehension by him too and his lawyers. It did indeed, Your Honor. I agree with you, it's unfortunate. The issue, though, today before the Court, this appeal, really centers on whether or not the trial court jumped the starting line a little bit and said there's no question of fact as to whether there was probable cause on the part of two particular ICE agents, the defendants in the case. There really is an insufficient record to get into what they reasonably believed would be probable cause. What are the disputes of facts here? Are you disputing that when he was arrested he said to agents that he was a Jamaican national and that he had been previously removed from the United States? No, the dispute of fact is what the ICE agents reasonably knew or should have known as to his nationality. This happened in the trial court. Just for clarification, I was not trial counsel. I'm coming into this strictly at the appellate level. What happened in the trial court is, from the record, it appears that the focus went to what did Mr. Gray know as being probable cause for the agents. Really, the issue should have been focused on what was reasonable for the agents. But in part, sir, isn't that because the agents' body of information came, at least in the first instance, from what they heard from Mr. Gray? They thereafter looked at the A files and saw documents that may or may not have required additional investigation, but at least in part, they are allowed to listen to what he says to them, yes? That's correct. The trial judge used a very helpful analogy or metaphor. He said, listen, if someone walks in and says, I robbed the bank on the corner of Elm and Church, and the agents go out and look at the bank's camera and sees that it's not the person, the defendant, saying that he robbed the bank, is that probable cause? And that is an excellent example of what happened here. What Mr. Gray knew or didn't know about his own legal status belies the point that they charged him with a crime for which he was not guilty. And so to focus on his, that might apply if we were seeking, if this was a situation where he was denied U.S. citizenship in front of the agency at an administrative level. But here he was charged with a crime, and there had to have been probable cause. There had to have been reasonable investigation. And ICE, more so maybe even than a U.S. attorney, should know, because it's within their jurisdictional space, how to determine someone's nationality. It's not enough for them simply to say, are you a U.S. citizen, if they're going to prosecute him for that. And just so that I'm clear, sir, your point is that eight days after his arrest or his apprehension, when the arrest warrant and the complaint were prepared, that's when, by that time, ICE should have known that irrespective of what he was saying to them. Certainly by the time he was convicted and sentenced or pled and was sentenced, they should have known. There should have been more of an inquiry. But I would add that, you know, and I say this, you know, equally, it may turn out in the course of discovery that there were other facts that were known or came to light. The problem is we're here on an appeal of a motion for summary judgment. And those facts just aren't known. If we get our second bite at the apple, as it were, and go back, we'll take the depositions of, you know, relevant witnesses. And, you know, at that point, it will become certainly a weight in credibility. But it also may become conclusive. Sir, understood. But this was on motion for summary judgment, correct? Correct. There was discovery, was there not? There was some. And I believe if in the transcript there was even some inquiry by the trial judge to say, hey, you know, have you done the depositions of the agents themselves and so forth. But the trial judge had the record that he had. Correct. He had the record that he had. And even based on the record that he had and my time running short, I would note to the court that the legal standard being under North Carolina law, Strickland v. Hedrick, says in relevant part, thus to establish probable cause, the evidence need not amount to proof of guilt or even to prima facie evidence of guilt. But it must be such as would actuate a reasonable man or woman acting in good faith. Reasonable person acting in good faith. So all of that, given that ICE should have known, that ICE knows, should know its jurisdiction better than anyone, should have done a little more inquiry. And in the factual record, they knew that the dad was a United States citizen. And presumptively they knew that the mother was as well and that the timing on that was in the 1990s. I think it was 1990 actually. So several years before. So for them to just say, okay, let's take a look and do a little further inquiry before we go and charge a crime to find that out. Now, he had counsel. Mr. Gray had counsel. The counsel certainly fell down on that responsibility for several years. But counsel for Mr. Gray was not necessarily responsible for prosecuting Mr. Gray. He was there to defend Mr. Gray. And the government was there to prosecute. If a person admits to having committed a crime, that establishes in most circumstances, that will establish probable cause. Now, probable cause can dissipate. But I'm having a very difficult time seeing how, given his repeated statements that he was a Jamaican national, he is not an American citizen, that ICE didn't have reason to take that at face value. Your Honor, I believe that ICE should have used that statement as one piece of evidence. Going back to what the trial judge used as his analogy, the mere fact that somebody admits that he did something may not necessarily mean that he in fact did it or that he was guilty of the crime that he was being accused. Referring to the analogy, if someone comes in and says, I robbed a bank, I'd say at that moment there's probably probable cause that he robbed the bank. Probable cause could dissipate if the officers then go to the bank and see that no robbery has taken place. But your argument has to be that the notations in the file were sufficient to dissipate the probable cause they had. And enough that we could take it to a jury and have a moment with a trier of fact to determine. Thank you. May it please the Court. My name is David Nelson. I represent the appellees in this matter. Starting with the analogy, and this was something that I was trial counsel, so this is something that Judge Meyer and I had a chance to discuss at both the motion to dismiss and at summary judgment stage. The analogy and the better analogy, I think, given the facts of this case, are not did someone hear a bank alarm, someone walks up and says, oh, I robbed the bank. The better fact or the better analogy is someone is caught who has escaped from jail. The crime they were prosecuted for, convicted of, and sentenced was bank robbery. When you catch that person for escaping from jail, the agents are never asked to go back and look at whether the underlying conviction, the bank robbery, is valid. And that's what we have in this case. And to Judge Chin's point, it's an unfortunate case, and it's an unfortunate case for what happened in 1995. In 1995, Wayne Gray was represented by counsel. Wayne Gray committed a felony. He was put into removal proceedings. He was represented by counsel. He conceded that he was not a citizen of the United States. That was his moment, and that infects everything else that comes after it. In 1995, Wayne Gray does not ask to see if he derives status. In fact, the notation in the file, which is at the record at 470, says that although both of his parents were United States citizens, the father left the mother in 1987, that Wayne Gray lived with his mother and that Wayne Gray did not derive status from his mother because Wayne Gray's mother didn't naturalize until 1992, when Wayne Gray was after 18 years old. So in the 1995 litigation, he asked for discretionary relief but concedes the idea that he's a Jamaican national. So now when we go forward to 2012, what the agents have before them is really clear. They have the note in the file that I just mentioned. They have Mr. Gray coming in on identity fraud, but the agent says, he testifies in his deposition, one of the depositions the plaintiff had the opportunity to conduct during discovery in addition to paper discovery. What Agent Maltis says during his deposition is, I found him to be credible. His information matched up what I had in the computer. He had been previously removed. He admits that he's a citizen of Jamaica. He admits that he legally reenters. We then compare that to the note in the file. We have the previous removal order. That establishes probable cause. Now, the court wasn't shifting the burden of establishing probable cause to Mr. Gray, as opposing counsel suggests. What the court was doing in this case is focusing on the fact that this is now a civil case for malicious prosecution and associated torts, which all sort of fall under the rubric of probable cause. It's the plaintiff's burden to prove that the government lacked probable cause to initiate this. Now, I think as a practical matter, it becomes a back and forth, but it's still the plaintiff's burden to prove that. And the plaintiff hasn't carried that burden. And the plaintiff can't carry that burden because of the things that he did, both in 1995, which I think is, as Judge Tim said, the truly unfortunate part of this case. But also what he says in 2012. And when we look at when this issue is finally raised in the district court in North Carolina in 2013 and 2014, one of the really key points is the letter from Mr. Gray's immigration attorney that the court appoints, a woman by the name of Victoria Block. And that's at 509 in the record. And what that letter says is that no one knew that Wayne Gray could acquire citizenship through his father, that this was a convoluted path. And that right there is probably some of the best evidence that undercuts the argument that the agents should have been able to figure out prior to the criminal arrest that he was a citizen. We know in CIS's investigation of his citizenship following the claim that he's a citizen, the CIS requested additional information. We know that Victoria Block submitted additional information, affidavits, the father's naturalization certificate, which shows that Wayne Gray was living with him. But that's not in front of the agents on August 29, 2012. What's in front of the agents on August 29, 2012 are Wayne Gray's statements, the notes in the file. And that establishes probable cause. In terms of the timeliness, and I'm happy to take any additional questions if the court has a probable cause. Well, I think one of the things your adversary suggested in the course of his argument was that irrespective of what they knew on day one, there came a time, be it eight days later or somewhere during this rather lengthy period, where agents knew or should have known that he was in fact a citizen. Are you suggesting that having made the determination they made on day one, they had no further obligation ever to check that, as Judge Livingston suggested, it would never have dissipated? Well, I think your Honor's right in the criminal proceeding that if we were litigating a motion to dismiss a criminal proceeding and there were facts that came to the agent's, exculpatory information that came to the agent's mind that I was here representing the government on a criminal case, I think I'd be in a much harder position, for sure. I think the problem for the plaintiff's argument is that this is a civil case for a malicious prosecution. So really the moment in time that we're looking, the snapshot in time we're looking at, is what the agents did at the time they initiated that prosecution. Which was eight days later, correct, sir? Right, August 29, 2012. Right. So they have the plaintiff's statements and the addition of the information in the A file, the subject did not derive, subject lived with mother. And so I think that's the problem with the idea of looking what would have happened in 2013, 2014, is I think I'd be in a, I think I'd, I don't want to concede that I'd be in a much tougher case, because I don't have that authority in this case, but I think I'd be in a much tougher case if I was up here arguing, well, they shouldn't have done any additional investigation in the course of preparing this for trial, in a criminal trial. But defending the government on a civil case, I can look at that snapshot, because really the question is did they have probable cause to initiate the prosecution? That's the North Carolina law. I believe the case I cited in my brief was Turner. So we do really do look at that snapshot, Your Honor, because at that point in time the agents don't have any more control over that prosecution. They've initiated that. And there's been no accusations about the prosecutors themselves in North Carolina or the court or anything along those lines. It's really just been focused on the agents. In terms of the timeliness of the plaintiff's complaint or claims, I raise that second only because this is the rare case where timeliness is not actually a threshold issue. Malicious prosecution in this case would be timely. The false arrest, negligence, and negligent and intentional affliction of emotional distress would not be timely. However, the court can dispose of those issues on a ruling on probable cause. If the court reached the issue of timeliness, it's clear to me when you look at the plaintiff's complaint, which I believe in the record is pages, specifically pages 14 to 16, and then the administrative claims are at 156 to 158, 159. The plaintiff's complaint and the plaintiff's administrative claim focuses solely on the conducts of the agents and the decision to make the arrest. And so there really is no additional facts that play into the negligence claim, the negligent affliction, and obviously the false arrest is simply cabined to the false arrest. There's no reason why equitable tolling would apply here, nor has the plaintiff even raised it, nor did they raise it. Mr. Gray raised it below, so that's not the issue here. The issue is simply that false arrest, the negligence, and the negligent and intentional affliction of emotional stress were true at the time the plaintiff was arrested. If there are no further questions, I'll rest on my brief. Thanks. Your Honor, in reply, I would only emphasize that this was a criminal prosecution where the defendants had to swear out a sworn affidavit, and there should be a presumption and a burden on them to make absolutely sure before they bring these charges that they are, in fact, bringing these charges in good faith under Strickland, you know, for North Carolina. And that is a question of fact that deserves further inquiry and deserves to go beyond a summary judgment motion. What would happen, you know, if this had happened in the context of an accidental deportation, which apparently it did in 1995, we're talking about whether Mr. Gray properly informed the agents or decided to assert his U.S. citizenship to avoid the deportation. That's completely separate. That's in a civil proceeding. This being in a criminal proceeding, this being sworn affidavits and ultimately a loss of liberty for 744 days, while it's later learned that he's a U.S. citizen, there's a burden there, and that's what the civil cause of action is saying, that they didn't meet that burden for probable cause. When they said you're not a United States citizen, they should have gone to the bottom of the well to make sure that every stone in that well was, in fact, going to support he was not a U.S. citizen, and they did not do that. It was only Mr. Gray with subsequent counsel who later corrected that mistake, and that's relevant, and that should be consideration for further discovery and further inquiry and ultimately a trial. Thank you. Thank you both. The next two cases on the calendar are on submission, so I will ask the clerk to adjourn court. Court is adjourned.